JAMES L. JACOBS, State Bar No. 158277, jjacobs@gcalaw.com
KIMBERLY A. DONOVAN, State Bar No. 160729, kdonovan@gcalaw.com
ROBERT W. LUCKINBILL, State Bar No. 131977, rluckinb@gcalaw.com
GCA LAW PARTNERS LLP
1891 Landings Drive
Mountain View, CA 94043
(650) 428-3900 – Phone
(650) 428-3901 – Fax

Attorneys for Plaintiff
DAVID LEVINE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

DAVID LEVINE

    Plaintiff,

vs.

VOYAGER FLEET SYSTEMS, INC. and
US BANCORP

    Defendant

No. C 07 03710

COMPLAINT FOR BREACH OF
CONTRACT, ANTICIPATORY
BREACH OF CONTRACT, and
DECLARATORY RELIEF

(DEMAND FOR JURY TRIAL)

## PARTIES

1.    Plaintiff David LeVine ("Plaintiff") is, and was at all times alleged herein, an individual residing in Belmont, California.

2.    On information and belief, defendant Voyager Fleet Systems, Inc. ("Voyager") is, and was at all relevant times herein, a corporation organized and existing under the laws of Delaware, authorized to do business in the State of California and doing business in this District, with its principal place of business in Houston, Texas.

3.    On information and belief, defendant U.S. Bancorp ("U.S. Bank") is and was at all relevant times herein, a corporation organized and existing under the laws of Delaware, authorized to do business in the State of California and doing business in this District, with

COMPLAINT      -1-

its principal place of business in Minneapolis, Minnesota. Voyager and U.S. Bank are collectively referred to herein as "Defendants."

4. Voyager is a leading provider of the universal fleet fueling and maintenance card used as a payment system for over 1.5 million vehicles. On information and belief, Voyager is a wholly owned subsidiary of U.S. Bank.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over the claims pursuant to the 28 U.S.C. § 1332(a) in that the amount in controversy exceeds the sum or value of $75,000 and the action is between citizens of different states. This Court also has subject matter jurisdiction under the Declaratory Judgment Act (28 U.S.C. § 2201).

6. Defendants maintain offices in this District and have sufficient contacts with this District generally and in particular, with the events herein alleged, that they are considered to "reside" in this District. Accordingly, both Defendants are subject to the exercise of jurisdiction of this Court and venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a).

7. Pursuant to Local Rule 3-2, this action is properly assigned to the San Francisco Division of this Court.

## FACTUAL ALLEGATIONS

8. Pursuant to a written offer letter ("Offer Letter"), LeVine was employed by Defendants. Under the terms of the Offer Letter, LeVine was offered and accepted a position as Development Group Manager; Vice President pursuant to the terms set forth in the written Offer Letter. The Offer Letter described LeVine's position as follows:

> Responsible for applications systems analysis and programming activities for a group. Responsible for feasibility studies, time and cost estimates and the establishment and implementation of new or revised applications and programs. Assists in projecting software and hardware requirements. Assigns personnel to various projects and directs their activities; reviews and evaluates their work and prepares performance reports. Confers with and advises subordinates on administrative policies and procedures, technical problems, priorities and methods. Consults with personnel in other IS areas to coordinate activities. Prepares activity and progress reports regarding the activities of the development group.

COMPLAINT                                          -2-

9. The Offer Letter also identified Levine's qualifications for his position as Development Group Manager; Vice President, as follows:

> Excellent knowledge of information systems technology, especially industry specific applications, Comprehensive technical and business knowledge of the business unit supported. Thorough knowledge of organization policies and procedures. Excellent analytical, project management, tactical planning and managerial skills. Excellent verbal and written communication skills. Demonstrated management, leadership and interpersonal skills.

10. LeVine fulfilled all of his obligations under the contract evidenced by the Offer Letter.

11. Defendants, however, failed to allow LeVine to engage in the position described in the Offer Letter and further failed to allow LeVine to engage in activities consistent with his qualifications, despite committing to have "confirmed [LeVine's] continued employment in a comparable position," as described in the Offer Letter.

12. LeVine and Defendants also entered into a certain Retention Agreement ("Retention Agreement") dated as of January 3, 2006, a true and correct of which is attached hereto as Exhibit A and incorporated by reference as if fully set forth herein.

13. The Retention Agreement provides, in relevant part, as follows:

> 3.  Termination of Employment.
>
> (b) If Executive terminates Executive's employment for Good Reason on or prior to the Fourth Retention Date [January 4, 2010], Executive shall, upon such termination of employment, be entitled to receive an amount equal to (i) $4,000,000.00, *less* (ii) the sum of all retention Payments paid by Buyer to Executive prior to the effective date of such termination. . . . . Executive shall evidence a termination for Good Reason by written notice to Buyer setting forth in reasonable detail the facts and circumstances claimed by Executive to constitute Good Reason.

14. The Retention Agreement defines "Good Reason" as follows:

> 1.  Definitions. The following terms are defined below:
>
>     *   *   *
>
> (l) *"Good Reason"* shall mean (i) a reduction by Buyer

COMPLAINT                                                    -3-

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA 94043
(650)428-3900

1  in Executive's cash compensation as described in the Offer Letter, except for any such reduction in connection with the termination of Executive's employment by Buyer, (ii) a material reduction in Executive's title or job responsibilities as described in the Offer Letter or the assignment of recurring job responsibilities materially inconsistent with Executive's past experience, skills or training, or (iii) any requirement that Executive relocate more than 25 miles from the Company's existing offices in San Mateo, California. For purposes of this definition, "Offer Letter" shall mean the letter dated January 2, 2006 from Buyer to Executive setting forth the terms of Executive's employment with the Company.

15. During the course of his employment with Defendants, LeVine's manager told LeVine that if LeVine left the Company before the expiration of the four year period contemplated in the Retention Agreement, the Company would not make any further payments to LeVine.

16. To date, LeVine has received $1,000,000.00 of the $4,000,000.00 contemplated by the Retention Agreement. An additional $3,000,000.00 is due to be paid under the Retention Agreement.

17. LeVine's employment with the Company terminated on July 18, 2007, which is before the "Fourth Retention Date" specified in the Retention Agreement.

18. LeVine's termination was for Good Reason under the Retention Agreement.

19. LeVine provided written notice to Defendants setting forth in reasonable detail the facts and circumstances which constitute Good Reason.

20. LeVine has performed all conditions, covenants and promises required by him to be performed in accordance with the Retention Agreement, or has been prevented or excused from completing its performance by Defendants.

21. The Retention Agreement provides, at Section 3(d), that any amounts payable to Levine pursuant to Section 3(b), "shall be paid within 30 days after termination of Executive's Employment."

### FIRST CAUSE OF ACTION
### BREACH OF CONTRACT

22. Plaintiff repeats and incorporates herein by reference the allegations in the preceding paragraphs of this Complaint.

COMPLAINT                    -4-

23. As set forth above, LeVine entered into the contract evidenced by the Offer Letter. LeVine fulfilled all of his obligations under the contract. Defendants, however, breached the contract, as described above, causing harm to LeVine according to proof, including but not limited to, damaging LeVine's business reputation and goodwill, decreasing LeVine's marketability and future income, and causing him to suffer humility and disgrace in his employment.

## SECOND CAUSE OF ACTION
## ANTICIPATORY BREACH/ REPUDIATION OF RETENTION AGREEMENT

24. LeVine repeats and incorporates herein by reference the allegations in paragraphs 1 to 23, inclusive, of this Complaint.

25. By the foregoing acts, Defendants anticipatorily breached and positively repudiated the Retention Agreement.

26. LeVine would have had the ability to perform, and was willing to perform, the terms of the Retention Agreement.

27. As a direct and proximate result of the anticipatory breach and/or repudiation of the Retention Agreement, LeVine has been injured in an amount according to proof, and believed to be no less than $3,000,000.00.

## THIRD CAUSE OF ACTION
## DECLARATORY RELIEF

28. Plaintiff repeats and incorporates herein by reference the allegations in paragraphs 1 to 27, inclusive, of this Complaint.

29. There is a real and actual controversy between LeVine and Defendants regarding whether he is to receive further payment totaling $3,000,000.00 under the Retention Agreement.

30. LeVine seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57 for the purpose of determining and adjudicating questions of actual controversy between the parties.

31. LeVine contends, as it relates to Defendants and the Retention Agreement, that

COMPLAINT -5-

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA 94043
(650)428-3900

1  LeVine is entitled to receive, and Defendants are obligated to pay LeVine, the sum of
2  $3,000,000.00 no later than August 17, 2007.

3  **PRAYER FOR RELIEF**

4  WHEREFORE, LeVine prays for judgment as follows:

5  As to the First Cause of Action:

6      a)    For compensatory damages according to proof;

7      b)    That LeVine is entitled to such other relief as the Court deems appropriate.

8  As to the Second Cause of Action,

9      a)    For compensatory damages according to proof and believed to be in the
10  amount of $3,000,000.00;

11      b)    For pre-judgment and post-judgment interest;

12      c)    For costs of suit;

13      d)    For such other relief as the Court deems appropriate.

14  As to the Third Cause of Action, a declaratory judgment that as it relates to Defendants and
15  the Retention Agreement that:

16      a)    LeVine is entitled to receive, and Defendants are obligated to pay LeVine,
17  the sum of $3,000,000.00 no later than August 17, 2007.

18      b)    LeVine is entitled to receive, and Defendants are obligated to pay, LeVine's
19  costs of suit; and

20      c)    That LeVine is entitled to such other relief as the Court deems appropriate.

21  Dated: July 18, 2007

JAMES L. JACOBS
KIMBERLY A. DONOVAN
ROBERT W. LUCKINBILL
GCA LAW PARTNERS LLP

By: _____
James L. Jacobs
Attorneys for Plaintiff
DAVID LEVINE

## DEMAND FOR JURY TRIAL

Plaintiff David LeVine hereby demands trial by jury.

Dated: July 18, 2007

JAMES L. JACOBS
KIMBERLY A. DONOVAN
ROBERT W. LUCKINBILL
GCA LAW PARTNERS LLP

By: _____
James L. Jacobs

Attorneys for Plaintiff
DAVID LEVINE

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA 94043
(650) 428-3900

Case 3:07-cv-03710-JL    Document 1-3    Filed 07/18/2007    Page 8 of 16

**EXHIBIT A**

# RETENTION AGREEMENT

This RETENTION AGREEMENT (this "*Agreement*") is made as of January 3, 2006, by and between Voyager Fleet Systems, Inc., a Delaware corporation ("*Buyer*"), and David M. LeVine, an individual resident of California ("*Executive*").

## RECITALS

WHEREAS, Buyer and Executive have entered into a Stock Purchase Agreement dated as of December 30, 2005 (the "*Stock Purchase Agreement*") pursuant to which Buyer will purchase from Executive all of the outstanding capital stock of Advent Business Systems, Inc., a California corporation (the "*Company*"), and the Company will become a wholly owned subsidiary of Buyer; and

WHEREAS, the closing of the transactions contemplated by the Stock Purchase Agreement (the "*Closing*") is conditioned upon Executive remaining employed by the Company after the Closing; and

WHEREAS, Buyer has agreed to make the employment retention payments to Executive provided for herein.

NOW, THEREFORE, in consideration of Executive's continued employment with the Company, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.  <u>Definitions</u>. The following terms are defined below:

(a) "*Affiliate*" shall mean, for any entity, any other entity that directly or indirectly, through one or more intermediaries, controls, is controlled by or is under common control with such first entity.

(b) "*Buyer*" shall have the meaning set forth in the preamble to this Agreement.

(c) "*Cause*" shall mean termination by Buyer of Executive's employment as a result of:

(i) Executive's conviction or guilty plea to (A) a felony, or (B) any other crime involving dishonesty or moral turpitude that is related to Executive's employment duties;

(ii) Any act or acts of fraud, misappropriation or embezzlement by Executive against the Company or any of its Affiliates;

(iii) Executive's failure to perform duties with the Company reasonably assigned to him by the Board of Directors or management of the Company, which failure continues for more than 30 days following written notice of such failure to Executive by Buyer; and

(iv) Executive's material violation of the U.S. Bancorp Code of Conduct recurring after Executive's receipt of a warning of such violation.

(d) *"Closing"* shall have the meaning set forth in the recitals to this Agreement.

(e) *"Closing Date"* shall mean the date of the Closing.

(f) *"Code"* shall mean the Internal Revenue Code of 1986, as amended.

(g) *"Company"* shall have the meaning set forth in the preamble to this Agreement.

(h) *"Disability"* shall mean Executive's inability to perform the essential functions of his position with the Company by reason of any physical or mental impairment for a period of 90 days, with or without reasonable accommodation.

(i) *"Executive"* shall have the meaning set forth in the preamble to this Agreement.

(j) *"First Retention Date"* shall mean the date that is the one-year anniversary of the Closing Date or, in the event that such date is not a business day, the next business day.

(k) *"Fourth Retention Date"* shall mean the date that is the four-year anniversary of the Closing Date or, in the event that such date is not a business day, the next business day.

(l) *"Good Reason"* shall mean (i) a reduction by Buyer in Executive's cash compensation as described in the Offer Letter, except for any such reduction in connection with the termination of Executive's employment by Buyer, (ii) a material reduction in Executive's title or job responsibilities as described in the Offer Letter or the assignment of recurring job responsibilities materially inconsistent with Executive's past experience, skills or training, or (iii) any requirement that Executive relocate more than 25 miles from the Company's existing offices in San Mateo, California. For purposes of this definition, "Offer Letter" shall mean the letter dated January 2, 2006 from Buyer to Executive setting forth the terms of Executive's employment with the Company.

(m) *"Retention Date"* shall mean the First Retention Date, the Second Retention Date, the Third Retention Date or the Fourth Retention Date, as the case may be.

(n) *"Retention Payment"* shall mean $1,000,000.

(o) *"Second Retention Date"* shall mean the date that is the two-year anniversary of the Closing Date or, in the event that such date is not a business day, the next business day.

(p) *"Stock Purchase Agreement"* shall have the meaning set forth in the recitals to this Agreement.

(q) *"Third Retention Date"* shall mean the date that is the three-year anniversary of the Closing Date or, in the event that such date is not a business day, the next business day.

2

2.  Retention Payments.

(a)  In the event that Executive is employed by the Company on any of the First Retention Date, the Second Retention Date, the Third Retention Date or the Fourth Retention Date (as the case may be), Buyer shall make a Retention Payment to Executive. The sum of all Retention Payments made by Buyer to Executive shall not exceed $4,000,000.

(b)  Any Retention Payment made pursuant to this Agreement shall be paid to Executive at such time that paychecks for the Company's payroll period in which the applicable Retention Date falls are distributed to the Company's employees. Any Retention Payment will be subject to withholdings and deductions as required by law, in accordance with the Company's normal payroll procedures and policies.

(c)  Executive acknowledges and agrees that all Retention Payments provided for in this Section 2 shall be subject to Buyer's right of offset provided for in Section 10.1(f) of the Stock Purchase Agreement.

3.  Termination of Employment.

(a)  Buyer may terminate Executive from employment with the Company at will, with or without Cause at any time. If Buyer terminates the Executive from employment without Cause on or prior to the Fourth Retention Date, Executive shall, upon such termination of employment, be entitled to receive an amount equal to (i) $4,000,000, *less* (ii) the sum of all Retention Payments paid by Buyer to Executive prior to the effective date of such termination. If Buyer terminates the Executive from employment with Cause, Executive's rights to receive Retention Payments pursuant to this Agreement shall terminate as of the effective date of such termination; *provided, however,* that, in the event of such a termination, Executive shall be entitled to receive an amount equal to: (A)(1) X, *divided by* (2) 365, *multiplied by* (B) $1,000,000, where X equals the total number of days Executive was employed during the year ending on the first Retention Date occurring after the date on which Executive terminated his employment.

(b)  If Executive terminates Executive's employment for Good Reason on or prior to the Fourth Retention Date, Executive shall, upon such termination of employment, be entitled to receive an amount equal to (i) $4,000,000, *less* (ii) the sum of all Retention Payments paid by Buyer to Executive prior to the effective date of such termination. If Executive terminates Executive's employment for any reason other than Good Reason, death or Disability, Executive's rights to receive Retention Payments pursuant to this Agreement shall terminate as of the effective date of such termination; *provided, however,* that, in the event of such a termination, Executive shall be entitled to receive an amount equal to: (A)(1) X, *divided by* (2) 365, *multiplied by* (B) $1,000,000, where X equals the total number of days Executive was employed during the year ending on the first Retention Date occurring after the date on which Executive terminated his employment. Executive shall evidence a termination for Good Reason by written notice to Buyer setting forth in reasonable detail the facts and circumstances claimed by Executive to constitute Good Reason.

(c)  If Executive's employment is terminated as a result of Executive's death or Disability, Executive or Executive's heirs or personal representatives, as the case may be, shall, upon such termination of employment, be entitled to receive 50% of an amount equal to (i) $4,000,000, *less* (ii) the sum of all Retention Payments paid by Buyer to Executive prior to the effective date of such termination.

(d)  Any amounts payable by Buyer pursuant to Sections 3(a), (b) or (c) to Executive or Executive's heirs or personal representative, as the case may be, shall be paid within 30 days after termination of Executive's Employment.

(e)  Executive acknowledges and agrees that all payments provided for in this Section 3 shall be subject to Buyer's right of offset provided for in Section 10.1(e) of the Stock Purchase Agreement.

4.  IRC Section 409A.  To the extent applicable, this Agreement shall be interpreted in accordance with Section 409A of the Code and the Department of Treasury regulations and other interpretive guidance issued thereunder. Notwithstanding anything to the contrary in this Agreement, in the event that Buyer determines that payments made under this Agreement may be subject to Section 409A of the Code, Buyer may adopt such amendments to this Agreement or adopt other policies and procedures (including amendments, policies and procedures with retroactive effect), or take any other actions (including the delay of payments for a period of six months following Executive's termination of employment if he is determined to be a key employee as defined under Section 409A of the Code) that Buyer determines are necessary or appropriate to (a) exempt such payments from Section 409A of the Code and/or preserve the intended tax treatment of the benefits provided with respect to any Retention Payment, or (b) comply with the requirements of Section 409A of the Code and the related Department of Treasury regulations and other interpretive guidance.

5.  Successors and Binding Agreement.

(a)  Buyer may assign neither this Agreement nor any right, remedy or obligation arising hereunder or by reason hereof without the prior written consent of Executive. Notwithstanding the foregoing, Buyer may, without the consent of Executive, assign its rights, remedies and obligations under this Agreement to (i) any Affiliate of Buyer, or (ii) any corporation or other business entity with which Buyer may merge or consolidate, or to which Buyer may sell or transfer all or substantially all of its assets; *provided, however*, that (A) any assignee of Buyer pursuant to this Section 5(a) shall have sufficient assets to meet the Buyer's obligations under this Agreement and (B) Buyer, if its corporate existence continues after the assignment, shall guarantee its assignee's performance of such obligations.

(b)  Executive acknowledges that Buyer may merge or consolidate the Company with Buyer or another Affiliate of Buyer on or after the date of this Agreement. Nothing contained in this Agreement shall prohibit or restrict Buyer from effecting such merger or consolidation. If and after such a merger or consolidation occurs, for purposes of this Agreement, the term the "*Company*" shall mean the surviving entity in such merger or consolidation.

4

(c)     This Agreement is personal to Executive, and Executive may not assign or transfer any part of his rights or duties hereunder, or any compensation due to him hereunder, to any other person. Notwithstanding the foregoing, the provisions of Section 3(c) of this Agreement shall inure to the benefit of and be enforceable by Executive's heirs or personal representatives.

6.     <u>Modification; Waiver</u>. No provisions of this Agreement may be modified, waived or discharged unless such waiver, modification or discharge is agreed to in a writing signed by the parties to this Agreement. No waiver by either party hereto at any time of any breach by the other party hereto of, or compliance with, any condition or provision of this Agreement to be performed by such other party shall be deemed a waiver of similar or dissimilar provisions or conditions at the same or at any prior or subsequent time.

7.     <u>Notice</u>. All notices, consents, requests, instructions, approvals or other communications provided for herein shall be in writing and delivered by personal delivery, overnight courier, mail, electronic facsimile or e-mail addressed to the receiving party at the address set forth herein. All such communications shall be effective when received.

If to Buyer:

> Voyager Fleet Systems, Inc.
> c/o U.S. Bank National Association
> 200 South Sixth Street
> Minneapolis, MN  55402
> Attn: Mr. Robert T. Abele
> Facsimile No. (612) 973-7651

With copies to:

> U.S. Bancorp
> 800 Nicollet Mall
> Minneapolis, MN  55402
> Attn: Lee R. Mitau, Esq.
> Facsimile No. (612) 303-0898

and:

> Dorsey & Whitney LLP
> 50 South Sixth Street, Suite 1500
> Minneapolis, MN  55402
> Attn: Jay L. Swanson, Esq.
> Facsimile No. (612) 340-7800

If to Executive:

> David M. LeVine
> 2316 Casa Bona Avenue

>Belmont, CA 94002
>Telephone No. (650) 572-8206

With a copy to:

>Montgomery Law Group
>525 Middlefield Road, Suite 250
>Menlo Park, CA 94025
>Attn: Roger Royse, Esq.
>Facsimile No. (650) 331-7001

Either party hereto may change its address for purposes of this Section 7 by giving 15 days' prior notice to the other party hereto.

8. <u>Severability</u>. If any term or provision of this Agreement or the application hereof to any person or circumstances shall to any extent be invalid or unenforceable, the remainder of this Agreement or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable shall not be affected thereby, and each term and provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

9. <u>Counterparts</u>. This Agreement may be executed in several counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

10. <u>Governing Law</u>. This Agreement has been executed and delivered in the State of California and shall in all respects be governed by, and construed and enforced in accordance with, the laws of the State of California, including all matters of construction, validity and performance.

11. <u>Effect of Agreement; Entire Agreement</u>. Buyer and Executive understand and agree that this Agreement is intended to reflect their agreement only with respect to retention payments and payments upon termination of Executive's employment with the Company and is not intended to create any obligation on the part of either party to continue employment. This Agreement supersedes any and all other oral or written agreements or policies made relating to the subject matter hereof and constitutes the entire agreement of the parties relating to the subject matter hereof.

*[Signature Page Follows.]*

IN WITNESS WHEREOF, Buyer and Executive have executed this Retention Agreement as of the date first above written.

                                VOYAGER FLEET SYSTEMS, INC.

By: _____
Name: Robert T. Abele
Title: President


_____
David M. LeVine

IN WITNESS WHEREOF, Buyer and Executive have executed this Retention Agreement as of the date first above written.

                                          VOYAGER FLEET SYSTEMS, INC.

                                          By: _____
                                          Name: Robert T. Abele
                                          Title: President

                                          */s/ David M. LeVine*
                                          David M. LeVine